In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2333

Jessie L. Redmond,

Petitioner-Appellant,

v.

Phil Kingston, Warden,

Respondent-Appellee.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 98-C-106--Rudolph T. Randa, Judge.

Argued October 26, 2000--Decided February 14, 2001

Before Bauer, Posner, and Ripple, Circuit Judges.

Posner, Circuit Judge.  Under the current regime
governing federal habeas corpus for state prison
inmates, the inmate must show, so far as bears on
this case, that the state court which convicted
him unreasonably applied a federal doctrine
declared by the United States Supreme Court, 28
U.S.C. sec. 2254(d)(1); Williams v. Taylor, 529
U.S. 362 (2000); Morgan v. Krenke, 232 F.3d 562
(7th Cir. 2000), in this case the doctrine that
unreasonably limiting the cross-examination of a
prosecution witness infringes the constitutional
right of confrontation. E.g., Delaware v. Van
Arsdall, 475 U.S. 673, 679-80 (1986); Davis v.
Alaska, 415 U.S. 308 (1974). The petitioner,
Redmond, a counselor at an institution for drug-
and alcohol-abusing minors, was convicted of
statutory rape of Heather, a 15-year-old resident
of the institution. The specific charge was that
he had traded cocaine to her for sex. The state
acknowledged at argument that the principal
evidence of the offense was Heather's testimony
and that of another resident, Michelle, who,
however, merely repeated what Heather had told
her had happened. There was also evidence that
Heather had tested positive for cocaine after the
alleged offense but that she had a long history
of using cocaine and might have gotten it from
someone other than Redmond or for something other
than sex.

 Eleven months before the alleged offense,
Heather had told her mother that she had been

forcibly raped, and she had offered her torn clothes as evidence. She had repeated the story of the rape, with many circumstantial details, to a hospital nurse and to a police officer investigating the incident, but later had admitted making up the story (and ripping her clothes herself) in order to get her mother's attention. Her new story was that she had had sex with the man she had accused of forcible rape, but that it had been with her consent. Since she was underage, the police continued to investigate the incident as a crime. The man was never found, and there is no evidence other than Heather's say-so that the incident actually occurred. There is no serious doubt that her recantation of the forcible-rape story was truthful. Redmond offered more than thirty police reports of the investigation of Heather's claim that she had been forcibly raped, convincingly demonstrating its falsity, and in addition the district attorney had instituted contempt charges against Heather. Compare Hughes v. Raines, 641 F.2d 790, 792 (9th Cir. 1981).

Redmond wanted to bring out her lie on cross-examination in order to show that Heather would lie about a sexual assault in order to get attention, and thus had a motive to accuse him falsely. The trial judge, seconded by the Wisconsin court of appeals, refused to permit this cross-examination. The court of appeals held that although the state's rape-shield law makes an exception for a prior false charge of a sexual assault, Wis. Stat. sec. 972.11(2)(b)3, Heather's false charge did not have "sufficient probative value to outweigh its inflammatory and prejudicial nature," and therefore, under another section of the statute, sec. 971.31(11), it was inadmissible. The court thought the false charge merely "cumulative of other evidence which went to Heather's credibility," namely that she had begun using drugs at the age of 12, had stolen and occasionally danced (!) to obtain money for cocaine, had run away from the institution, had skipped school, and had told lies in the past. Furthermore, the court thought the evidence of the false charge might have "confused the issue" since "the initial recantation involved consent which was not an element of the current charges," and also that it might have misled the jury "into focusing on Heather's willingness to have sexual intercourse with a complete stranger, instead of on the charges against Redmond." State v. Redmond, 1996 WL 485095, at *10 (Wis. App. Aug. 28, 1996).

With all due respect, we believe that the court of appeals' analysis and conclusion cannot be considered a reasonable application of the Supreme Court's confrontation doctrine. Compare

State v. DeSantis, 456 N.W.2d 600, 608-09 (Wis. 1990). The evidence of the false charge of forcible rape was not cumulative of other evidence bearing on Heather's credibility, because none of the other evidence either involved a false charge of being sexually assaulted or furnished a motive for such a charge. The fact that a teenage girl has a disordered past and lies a lot (who doesn't?) does not predict that she will make up stories about having sex. To indulge such an assumption would be to place such persons largely beyond the protection of the law. But the fact that the girl had led her mother, a nurse, and the police on a wild goose chase for a rapist merely to get her mother's attention supplied a powerful reason for disbelieving her testimony eleven months later about having sex with another man, by showing that she had a motive for what would otherwise be an unusual fabrication. Delaware v. Van Arsdall, supra, 475 U.S. at 679-80; Wealot v. Armontrout, 948 F.2d 497 (8th Cir. 1991); United States v. Stamper, 766 F. Supp. 1396 (W.D.N.C. 1991), aff'd without opinion under the name In re One Female Juvenile Victim, 959 F.2d 231 (4th Cir. 1992).

The evidence thus was not cumulative, or otherwise peripheral, considering that testimony by Heather was virtually the only evidence of Redmond's guilt that the prosecution had. Nor was the evidence of her previous false charge of rape prejudicial to the state, except insofar as its prejudicial effect was a function of its probative weight, which of course is not the relevant meaning of prejudice. United States v. Jackson, 886 F.2d 838, 847 (7th Cir. 1989). The prejudice that offsets probative weight has to inhere in some extraneous fact, such as embarrassing but irrelevant details or, as the court believed, in the potential of the evidence to confuse the trier of fact. But in concluding that there was a danger of confusion the court committed a fatal analytical mistake. It assumed that Heather would be required or permitted to testify that she had had consensual sex with the alleged rapist, evidence barred by the rape-shield law. The only evidence that was relevant to her credibility in Redmond's case, however, the only evidence she would or should have been permitted to give on that subject, was that within the preceding year she had made up a story about being forcibly raped. Whether or not she had had sex with the alleged rapist was irrelevant, since Redmond was not prepared to try to prove that she had not. For unexplained reasons the Wisconsin court of appeals thought that if Redmond's lawyer had been permitted to ask Heather whether she had ever made a false charge of forcible sexual assault, the door would have been opened to an inquiry into whether she

had had sex on that occasion at all. We cannot think of any reason why. The state could not have used the "fact" that Heather had had sex with the alleged forcible rapist to show that she fabricates only tales of being forcibly raped, because, all objections based on the rape-shield statute to one side, the state can no more show that Heather had sex with the alleged rapist than Redmond can show the contrary.

And thus the court's ruling, though ostensibly based on the rape-shield statute, derives no support from that statute. The statute protects complaining witnesses in rape cases (including statutory-rape cases) from being questioned about their sexual conduct, but a false charge of rape is not sexual conduct. See Wis. Stat. sec. 972.11(2)(a) (defining such conduct); cf. United States v. Bartlett, 856 F.2d 1071, 1088 (8th Cir. 1988); United States v. Stamper, supra, 766 F. Supp. at 1399 and n. 2. The false-charge "exception" to the rape-shield statute is not really an exception, but rather a reminder of the limited meaning of "sexual conduct" as defined in the statute. The only basis for the court's ruling was the general principle of the law of evidence, which is codified for federal trials in Fed. R. Evid. 403 but is equally a principle of Wisconsin's law of evidence, see Wis. Stat. sec. 904.03, that relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial (confusing, or cumulative) effect. When that unexceptionable rule is applied as it was here to exclude highly probative, noncumulative, nonconfusing, nonprejudicial evidence tendered by a criminal defendant that is vital to the central issue in the case (Heather's credibility), the defendant's constitutional right of confrontation has been infringed. Olden v. Kentucky, 488 U.S. 227, 232 (1988) (per curiam); Delaware v. Van Arsdall, supra, 475 U.S. at 679-80; Davis v. Alaska, supra, 415 U.S. at 316-17; United States v. Sasson, 62 F.3d 874, 882-83 (7th Cir. 1995).

Olden is factually very similar to the present case, which eliminates any question about the scope of the applicable federal doctrine declared by the Supreme Court, while cases such as Hogan v. Hanks, 97 F.3d 189, 191 (7th Cir. 1996), and United States v. Bartlett, 856 F.2d 1071, 1087-89 (8th Cir. 1988), which upheld the exclusion from evidence of false rape charges, are readily distinguishable. They are cases in which the defendant wanted to use the falsity of the charges to demonstrate that the complaining witness was a liar, rather than to demonstrate that she had a motive to lodge a false accusation against the defendant. The use of evidence that a person has lied in the past to show that she is

lying now is questionable, quite apart from rape-shield laws, since very few people, other than the occasional saint, go through life without ever lying, unless they are under oath. Cf. Fed. R. Evid. 404(b), 608(b); Hogan v. Hanks, supra, 97 F.3d at 191; Hughes v. Raines, supra, 641 F.2d at 793. The probative value of such evidence when used for such a purpose is small and may be outweighed by the prejudicial effect of revealing that the witness had made such a serious charge falsely. United States v. Bartlett, supra, 856 F.2d at 1088-89. But while "generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, . . . no such limit applies to credibility attacks based upon motive or bias," Quinn v. Haynes, 2000 WL 1784161, at *5 (4th Cir. Dec. 6, 2000)--as in this case.

The judgment is reversed with directions to order the petitioner released unless the state retries him within 120 days of the date of this decision.

Reversed.